UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,

       Plaintiff,

vs.       Case No. 4:18-cv-01754

ARNOLD CROSSROADS, LLC,
a Missouri limited liability company;

SPECIALTY RETAILERS, INC.,
a Texas corporation;

CCDJ L.L.C.,
a Missouri limited liability company;

       Defendants.

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, ARNOLD CROSSROADS LLC, a Missouri limited liability company; SPECIALTY RETAILERS, INC., a Texas corporation; and CCDJ L.L.C., a Missouri limited liability company (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant Arnold Crossroads, LLC's property, the Arnold Crossroads Shopping

Center, is located at and near 215 Arnold Crossroads Center, Arnold, Missouri 63010, in Jefferson County ("Arnold Crossroads Shopping Center").

3. Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district. The Defendants' properties and places of public accommodation are located in and do business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Defendant Arnold Crossroads, LLC owns, leases, leases to, or operates a place of public accommodation (shopping center) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant Arnold Crossroads, LLC is responsible for complying with the obligations of the ADA.

6. The place of public accommodation that the Defendant Arnold Crossroads, LLC owns, operates, leases or leases to is known as the Arnold Crossroads Shopping Center.

7. Defendant Specialty Retailers, Inc. owns, leases, leases to, or operates a place of public accommodation (retail store) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant Specialty Retailers, Inc. is responsible for complying with the obligations of the ADA.

8. The place of public accommodation that the Defendant Specialty Retailers, Inc. owns, operates, leases or leases to is known as "Gordmans" in the Arnold Crossroads Shopping Center.

9. Defendant CCDJ L.L.C. owns, leases, leases to, or operates a place of public accommodation (restaurant, bar, or other establishment serving food or drink) as defined by the

ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.  Defendant CCDJ L.L.C. is responsible for complying with the obligations of the ADA.

10. The place of public accommodation that the Defendant CCDJ L.L.C. owns, operates, leases or leases to is known as the "Hotshots Sports Bar and Grill' IN THE Arnold Crossroads Shopping Center.

11. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

12. Mr. Nekouee travels to the St. Louis area every three to six months to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

13. Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Arnold Crossroads Shopping Center which forms the basis of this lawsuit on March 27, 2018, and on September 24, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area and close to the hotels he stays at in the area.

14. Fred Nekouee has definite plans to return to the St. Louis area in December of 2108.

15. Mr. Nekouee likes to shop at stores like Gordmans to buy necessary items for himself while traveling or gifts for his family, and since it is a chain he knows generally what it offers for sale.  He would like to return to the Gordmans at the Arnold Crossroads Shopping Center.

16. Fred Nekouee has bought goods at the Gordmans in the Arnold Crossroads Shopping Center on March 27, 2018 and on September 24, 2018.

17. Fred Nekouee likes the food and drink at Hotshots Sports Bar and Grill at the Arnold Crossroads Shopping Center. He would like to return to this Hotshots Sports Bar and Grill.

18. Fred Nekouee has bought food and drink at the Hotshots Sports Bar and Grill at the Arnold Crossroads Shopping Center on March 27, 2018 and on September 24, 2018.

19. The Gordmans, Hotshots Sports Bar and Grill, and the Arnold Crossroads Shopping Center are close to the hotels he stays at in the area.

20. Plaintiff Fred Nekouee has visited the St. Louis area near the Arnold Crossroads Shopping Center in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

21. For the reasons set forth in paragraphs 9-20 and 31, Mr. Nekouee plans to return to the Arnold Crossroads Shopping Center.

22. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's and women's restrooms in Gordmans and the Hotshots Sports Bar and Grill at the Arnold Crossroads Shopping Center, have impaired his access to the goods and services at Gordmans and the Hotshots Sports Bar and Grill, and deterred him from trying to access other stores at the Arnold Crossroads Shopping Center.

23. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not

nearly flat.

24.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

25.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

26.     On his visits to the Arnold Crossroads Shopping Center, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, and walking surfaces (including sidewalks).

27.     The Plaintiff also encountered barriers to access to and in the men's and women's restrooms in Gordmans and the Hotshots Sports Bar and Grill.

28.     The Plaintiff is deterred from visiting the Arnold Crossroads Shopping Center even though he enjoys its goods and services at such places of public accommodation as Gordmans and the Hotshots Sports Bar and Grill, because of the difficulties he will experience at the shopping center until the property is made accessible to him in a wheelchair.

29.     The Plaintiff is deterred from visiting other stores in the Arnold Crossroads Shopping Center, even though the shopping center is close to the hotels he stays in when he visits the area because of the difficulties he will experience there in the parking lot, access aisles, and walking surfaces, until the property is made accessible to him in a wheelchair.

30.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 35 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination

in violation of the ADA by the Defendant.

31. Fred Nekouee desires to visit the Arnold Crossroads Shopping Center not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

32. The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

33. The Plaintiff Fred Nekouee is expressly authorized to bring this action under 42 U.S.C § 12188(a), incorporating by reference the remedies set forth in 42 U.S.C. § 2000a-3.

34. The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

35. Preliminary inspections of the Arnold Crossroads Shopping Center, Gordmans, and the Hotshots Sports Bar and Grill at the shopping center have shown that violations exist.  The violations that Fred Nekouee personally encountered or observed on his visits to the Arnold Crossroads Shopping Center include, but are not limited to:

**PARKING AREA**

a. In the parking lot, the van accessible parking space width in front of Edward Jones is 118 inches and less than the minimum required width of 132 inches (3350 mm), in violation of Federal Law 2010, ADAAG § 502.2.  The Plaintiff observed this condition

and was deterred from parking in such space.

b. As shown in the photographs below, the parking space for disabled patrons in font of the Hotshots Sports Bar and Grill has an excessively steep running slope, as steep as 1:23.3 (4.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  The Plaintiff was unstable in his wheelchair while exiting and entering his vehicle in this parking space.





c. In the parking lot, the parking space for disabled patrons in front of Northern Tools

has an excessively steep running slope, as steep as 1:25.6 (3.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  The Plaintiff observed this condition and it deters him from visiting the Arnold Crossroads Shopping Center.

    d.  In the parking lot, the parking space for disabled patrons in front of and closest to Northern Tools has an excessively steep running slope, as steep as 1:29.4 (3.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  The Plaintiff observed this condition and it deters him from visiting the Arnold Crossroads Shopping Center.

    e.  In the parking lot, the parking space for disabled patrons in front of OneMain Financial has an excessively steep cross slope, as steep as 1:26.3 (3.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition and it deters him from visiting the Arnold Crossroads Shopping Center.

    f.  As shown in the photographs below, the parking space for disabled patrons in front of Gordmans has an excessively steep cross slope, as steep as 1:26.3 (3.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this excessively steep cross slope, and it caused him to be unstable while unloading and loading into his vehicle.





g. In the parking lot, the parking space for disabled patrons with van access in front of Edward Jones has an excessively steep running slope, as steep as 1:25 (4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition and it deters him from visiting the Arnold Crossroads Shopping Center.

h. In the parking lot, the parking space for disabled patrons with van access in front of Edward Jones has an excessively steep cross slope, as steep as 1:30.3 (3.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law

9

2010, ADAAG § 502.4.  The Plaintiff observed this condition and it deters him from visiting the Arnold Crossroads Shopping Center.

　　i.  In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Northern Tools is as steep as 1:26.3 (3.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  The Plaintiff observed this condition and it deters him from visiting Northern Tools.

　　j.  In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Hotshots Sports Bar and Grill is as steep as 1:32.3 (3.1%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered this slope and it made it very difficult for him to stay stable in his wheelchair in this access aisle while moving to and from his vehicle.

　　k.  In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Gordmans is as steep as 1:21.3 (4.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. Fred Nekouee encountered this steep slope in his wheelchair and it made it very difficult for him to stay stable while moving to and from his vehicle.

　　l.  The running slope in front of OneMain Financial is as steep as 1:11.1 (9%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition.

　　m.  The running slope of the walking surface in front of SI SENOR is as steep as 1:12 (8.3%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition.

n. The cross slope of the walking surface in front of OneMain Financial is as steep as 1:18.5 (5.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.  The Plaintiff observed this condition and it deters him from window shopping at the center and from entering OneMain Financial.

o. The cross slope of the walking surface in front of Nails & Hair is as steep as 1:23.3 (4.3%), which slope exceeds the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.  The Plaintiff observed this condition, and it deters him from window shopping at the center.

p. The cross slope of the walking surface in front of Gordmans is as steep as 1:21.7 (4.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.  Fred Nekouee encountered this condition, and it caused him to be unstable in his wheelchair.  He required assistance to enter Gordmans.

q. Handrails are not provided around the ramp in front of OneMain Financial where the slop is 9% over a ten-foot length (a ramp run rise of 10.8 inches, which rise is greater than the maximum allowed rise of 6 inches), in violation of Federal Law 2010, ADAAG §§ 405.8 and 505.  The Plaintiff observed this condition.

r. The ramp landing in front of Nails & Hair has a slope as steep as 1:23.3 (4.3%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.  The Plaintiff observed this condition.

**HOTSHOTS SPORTS BAR AND GRILL--ENTRANCE DOOR**

s. The force needed to open the entrance door to the Hotshots Sports Bar and Grill is 9.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N)

pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  Fred Nekouee, in his wheelchair, required assistance to open this entrance door and to enter Hotshots Sports Bar and Grill.

### HOTSHOTS SPORTS BAR AND GRILL--MEN'S RESTROOM

t.   The force needed to open the entrance door to the Hotshots Sports Bar and Grill is 8 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  Fred Nekouee, in his wheelchair, required assistance to open this door to the men's restroom in the Hotshots Sports Bar and Grill.

u.   The side wall grab bar in the Hotshots Sports Bar and Grill men's restroom only extends 48 inches from the rear wall and does not extend the minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.  The Plaintiff had difficulty supporting himself on this grab bar from his wheelchair to use the toilet.

v.   The lavatory pipes under the sink in the men's restroom in the Hotshots Sports Bar and Grill are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.  Fred Nekouee encountered this condition which could cause skin burns and injury to him in his wheelchair.

w.   In the men's restroom in the Hotshots Sports Bar and Grill, the leading edge of the hand dryer protrudes 7 inches from the wall into the circulation path, which protrusion into the circulation path is greater than the maximum of 4 inches when the object is between 27 and 80 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 307.2. The Plaintiff encountered this hand dryer when he was maneuvering his wheelchair in the

lavatory, and he had to avoid it so that he did not strike his head on it.

x. The urinal clear floor space width in the men's restroom is 23 inches and less than the minimum width of 36 inches to the alcove urinal (confined on all or part of three sides where the depth exceeds 24 inches), in violation of Federal Law 2010, ADAAG §§ 305.7.1. Fred Nekouee could not use the urinal in his wheelchair.

y. The toilet paper dispenser in the men's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 12 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7. The Plaintiff had difficulty reaching the toilet paper in the men's restroom.

z. The door handle in the men's restroom is installed at 55 inches above the finish floor, which height is higher than the maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 404.2.7. In his wheelchair, Fred Nekouee could not open this door without assistance.

**GORDMANS--MEN'S RESTROOM**

aa. The force needed to open the door to men's restroom in Gordmans is 15 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. Fred Nekouee, in his wheelchair, required assistance to open this door to the men's restroom in Gordmans.

bb. The accessible toilet compartment door pull in the men's restroom in Gordmans is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2. The Plaintiff could not fully close the door to this compartment.

13

cc. The knee clearance depth under the lavatory in the men's restroom in Gordmans is 5 inches and less than the minimum of 8 inches at 27 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 306.2.3. In his wheelchair, it was difficult for Fred Nekouee to use this sink.

dd. The press lever to the paper towel dispenser in the men's restroom in Gordmans is 52 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1. In his wheelchair, the Plaintiff could not use the paper towel dispenser.

**HOTSHOTS SPORTS BAR AND GRILL—WOMEN'S RESTROOM**

ee. Having encountered barriers in the men's restroom in the Hotshots Sports Bar and Grill, Fred Nekouee tried using the women's restroom. The force needed to open the entrance door to the women's restroom in the Hotshots Sports Bar and Grill is 7 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. Fred Nekouee, in his wheelchair, had difficulty opening this door to the women's restroom in the Hotshots Sports Bar and Grill.

ff. The side wall grab bar in the women's restroom in the Hotshots Sports Bar and Grill only extends 48 inches from the rear wall and does not extend the minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1. The Plaintiff had difficulty using this grab bar to support himself to sit on the toilet.

gg. The toilet paper dispenser in the women's restroom in the Hotshots Sports Bar and Grill is outside the reach range of an individual in a wheelchair, which dispenser

14

centerline is 14 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   Fred Nekouee could not reach the toilet paper from a normal sitting position on the toilet.

hh.   In the women's restroom in the Hotshots Sports Bar and Grill, the door hardware (latch or handle) requires tight grasping, pinching or twisting of the wrist and cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   Fred Nekouee required assistance to open this door.

ii.   In the women's restroom in the Hotshots Sports Bar and Grill, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   Fred Nekouee could not fully close this door when he used this toilet compartment.

**GORDMANS—WOMEN'S RESTROOM**

jj.   Having encountered barriers in the men's restroom in Gordmans, Fred Nekouee tried using the women's restroom.  The force needed to open the entrance door to the women's restroom in Gordmans is 13 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this door to the women's restroom in Gordmans.

kk.   In the women's restroom in Gordmans, the press lever to the paper towel dispenser is 51 inches above the finish floor and outside the reach range of an individual in a wheelchair of a maximum of 48 inches above the finish floor, in violation of Federal

15

Law 2010, ADAAG § 308.2.1.  In his wheelchair, the Plaintiff could not use this paper towel dispenser.

36. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

37. The discriminatory violations described in paragraph 35 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

38. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

39. Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

40. Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or

16

procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

41.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

42.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

43.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

44.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees

and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

45.   Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the Arnold Crossroads Shopping Center and adjacent parking lot spaces, Gordmans, and the Hotshots Sports Bar and Grill, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

46.   Millions of Americans require the use of a wheelchair for mobility.

47.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

48.   Removing existing architectural barriers to access pursuant to Title III of the ADA will be good for business at the Arnold Crossroads Shopping Center.

**WHEREFORE,** Plaintiff respectfully requests:

a.   The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.   Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such

steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

 c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

 d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

   Respectfully submitted,

   s/Robert J. Vincze_____
   Robert J. Vincze (MO #37687)
   Law Offices of Robert J. Vincze
   PO Box 792
   Andover, Kansas 67002
   Phone: 303-204-8207
   Email: vinczelaw@att.net

   *Attorney for Plaintiff Fred Nekouee*